Harriet M. Hageman (Wyo. Bar No. 5-2656)
Kara Brighton (Wyo. Bar No. 6-3071)
HAGEMAN & BRIGHTON, P.C.
222 E. 21st Street
Cheyenne, Wyoming 82001
Telephone: (307) 635-4888
Facsimile:  (307) 635-7581

*Attorneys for Wyoming Wolf Coalition - Petitioner-Intervenors*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STATE OF WYOMING, ) | |
| ) | Civil No. 09-CV-118-J |
| Petitioner; ) | |
| ) | |
| WYOMING WOLF COALITION, ) | |
| ) | |
| Petitioner-Intervenors, ) | |
| ) | |
| ) | |
| vs. ) | **WYOMING WOLF** |
| ) | **COALITION'S PETITION** |
| UNITED STATES DEPARTMENT ) | **FOR AWARD OF** |
| OF THE INTERIOR; UNITED STATES ) | **ATTORNEY'S FEES AND** |
| FISH & WILDLIFE SERVICE; KEN ) | **COSTS UNDER THE** |
| SALAZAR, in his official capacity ) | **EQUAL ACCESS TO** |
| as Secretary of the United States Department ) | **JUSTICE ACT** |
| of the Interior; ROWAN GOULD, in his official ) | |
| capacity as Acting Director of the  United States Fish ) | |
| and Wildlife Service, and STEPHEN GUERTIN, ) | |
| in his official capacity as the Regional Director of ) | |
| the Mountain-Prairie Region of the United States ) | |
| Fish and Wildlife Service, ) | |
| ) | |
| Respondents. ) | |

| | |
|---|---|
| BOARD OF COUNTY COMMISSIONERS OF ) <br> THE COUNTY OF PARK, STATE OF WYOMING, ) <br> ) <br> Petitioners, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES DEPARTMENT ) <br> OF THE INTERIOR; UNITED STATES ) <br> FISH & WILDLIFE SERVICE; KEN ) <br> SALAZAR, in his official capacity ) <br> as Secretary of the United States Department ) <br> of the Interior; ROWAN GOULD, in his official ) <br> capacity as Acting Director of the United States Fish ) <br> and Wildlife Service, and STEPHEN GUERTIN, ) <br> in his official capacity as the Regional Director of ) <br> the Mountain-Prairie Region of the United States ) <br> Fish and Wildlife Service, ) <br> ) <br> Respondents. ) | Civil No. 09-CV-0138-J |

**WYOMING WOLF COALITION'S
PETITION FOR AWARD OF ATTORNEY'S FEES AND COSTS
UNDER THE EQUAL ACCESS TO JUSTICE ACT**

Petitioner-Intervenor Wyoming Wolf Coalition hereby petitions this Court for an award of attorney's fees and other expenses as set forth below pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).

I. **THE WOLF COALITION IS ENTITLED TO RECOVER LEGAL FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

The EAJA provides that a court shall award to a prevailing party fees and other expenses incurred by the party in a civil action, including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The Wolf Coalition has prevailed in this civil action for judicial review of agency action. Furthermore, there is no basis for a finding that the position of the United States – specifically the United States Fish and Wildlife Service ("FWS") – was substantially justified or that special circumstances make an award unjust. Accordingly, Petitioner-Intervenor, Wyoming Wolf Coalition, is entitled to recover legal fees and expenses in this action.

The history of this case confirms that fees and costs are properly awarded to the Wolf Coalition. In July, 2005, the State of Wyoming filed a Petition requesting the FWS to delist the gray wolf population pursuant to the provisions of the Endangered Species Act, 16 U.S.C. §§ 1531 et seq. (ESA). The FWS rejected Wyoming's Petition on August 1, 2006, and the State filed suit on October 10, 2006. The Wolf Coalition intervened in the 2006 lawsuit, and enjoyed full party status. That action was eventually resolved, with the Wyoming Legislature

adopting certain amendments to the State's wolf statutes in 2007, and the State's Management Plan being revised accordingly.

On November 16, 2007, the FWS approved the 2007 Wyoming Management Plan finding that "if implemented, [the plan] would provide adequate regulatory protections to conserve Wyoming's portion of the recovered NRM wolf population into the foreseeable future." 2009 Final Rule at 15170. On February 27, 2008, the Respondents issued a Final Rule (2008 Final Rule) removing the Northern Rocky Mountain (NRM) gray wolf Distinct Population Segment (DPS) from the List of Endangered and Threatened Species.

On April 28, 2008, several environmental groups filed suit in Montana challenging the identification and delisting of the NRM DPS. In May 2008, the FWS filed a brief and supporting affidavits in the Montana District Court wherein it robustly defended its decision to delist the gray wolf in Wyoming. On July 18, 2008, the Montana Judge issued a preliminary injunction enjoining the FWS from implementing the 2008 Final Rule. The FWS, in what appears to have been a pre-arranged capitulation, refused to defend its 2008 Final Rule, Wyoming's statutory provisions or the Wyoming Management Plan and instead, on September 22, 2008, requested the Montana Court to vacate and remand the Rule.

In an effort to address the Montana Court's concerns, Wyoming made additional changes to the 2007 Plan and issued a revised document on November 18, 2008. Those

changes provide even greater protections to the gray wolf population.

On April 2, 2009, the FWS issued a new Final Rule to Identify a Separate Northern Rocky Mountain Population of Gray Wolves as a Distinct Population Segment and to Revise the List of Endangered and Threatened Wildlife (2009 Final Rule). The 2009 Final Rule was the subject of the underlying lawsuit before this Court. The 2009 Final Rule is a complete reversal of the FWS's previous findings and the 2008 Rule with respect to Wyoming:

> [W]e, the U.S. Fish and Wildlife Service (Service), identify a distinct population segment (DPS) of the gray wolf (*Canis Lupis*) in the Northern Rocky Mountains (NRM) of the United States and revise the List of Endangered and Threatened Wildlife by removing gray wolves within NRM DPS boundaries, *except in Wyoming*.

2009 Final Rule at 15123 (emphasis added). The FWS's 2009 Final Rule rejected not only Wyoming's 2007 Plan, but the revisions that were made and adopted by Wyoming in November, 2008.

The State of Wyoming filed suit on June 2, 2009 and on July 8, 2009, this Court granted leave for the Wolf Coalition to intervene. The FWS refused to delist the gray wolf in Wyoming despite acknowledging that Wyoming has continuously exceeded its recovery goals:

> Our current estimate for 2008 indicates the NRM DPS contains approximately 1,639 wolves (491 in Montana; 846 in Idaho; 302 in Wyoming) in 95 breeding pairs (34 in Montana; 39 in Idaho; 22 in Wyoming). *These numbers are about*

5

> *5 times higher than the minimum population recovery goal and 3 times higher than the minimum breeding pair recovery goal. The end of 2008 will mark the ninth consecutive year the population has exceeded our numeric and distributional recovery goals.* (Emphasis added).

*Id*.

The Administrative Record in this matter overwhelmingly and undisputably established that Wyoming has not only met, but exceeded its recovery goals, and has met every other delisting criteria that has been established. In 2008, the FWS approved Wyoming's 2007 Wolf Management Plan, delisted the wolf in Wyoming and subsequently argued vigorously in support of the Plan. Yet in 2009, the USFWS - in what was an obvious politically-inspired U-turn - changed the rules of the game and carved out Wyoming from the delisting decision. It did so despite the fact that its own experts found that Wyoming's dual status would not affect its ability to protect a recovered wolf population:

> The absence of wolf breeding pairs in the 88% of Wyoming where the wolf is designated as a predatory animal **has no impact** on Wyoming's ability to maintain its share of the GYA metapopulation segment because **that area is largely highly unsuitable wolf habitat** (Oakleaf 2007) and it is not located between the core recovery areas so it can not effect the rate of natural dispersal between the three core recovery areas.

AR2009-032170 (emphasis added).

On November 18, 2010 this Court issued its "Order Setting Aside Agency Decision in Part and Remanding Agency Decision in Part," 2010 WL 4814950 (D. Wyo. 2010), and

confirmed that Wyoming's Wolf Management Plan passes scientific scrutiny, that it meets the ESA delisting criteria, that the Plan provides for an adequate regulatory mechanism to protect a recovered wolf population, and that Wyoming is entitled to manage the wolves as predators in certain areas of the State. More specifically, this Court made the following points:

- "There is no indication that lack of genetic connectivity and diversity would cause the wolf population in the GYA [Greater Yellowstone Area] to become threatened in the foreseeable future." Slip Opinion at 37.

- "Wyoming has committed to manage for at least 15 breeding pairs and at least 150 wolves in mid-winter to ensure the population never falls below the minimum recovery goal of 10 breeding pairs and 100 wolves per state." *Id*.

- "[T]he Court finds that the government's determination that Wyoming must adopt a state-wide trophy game management area is not supported by any new commercial or scientific data showing that a state-wide trophy area ensures Wyoming's share of the recovered NRM wolf population would be conserved in accordance with the ESA." *Id* at 40.

- "The agency cites to no new data suggesting that a statewide trophy game management area is required to facilitate genetic exchange, natural or managed, in the NRM DPS in the foreseeable future. It cites to little data that indicates a dual classification system

7

such as that proposed in this case is not permissible or would preclude compliance with the ESA." *Id*.

- "The agency seeks to maintain wolf recovery levels at a level in excess of the minimum recovery levels outlined in the 1987 recovery plan and 1994 FEIS. It does not offer reasoned explanations why the entire state of Wyoming must be designated as a trophy game area when more than 70% of suitable wolf habitat is in the GYA and northwestern Wyoming." *Id*. at 42.

- "There is no scientific or commercial data that suggests the state's dual classification of wolves, in and of itself, cannot meet, accomplish, and maintain the identified recovery goals in the GYA, including northwestern Wyoming." *Id*. at 44.

- "The zone management scheme in the recovery plan recognized that Zone III areas [i.e., the majority of Wyoming] will contain established human activities such as domestic livestock use or developments in sufficient degree as to render wolf presence undesirable and that maintenance and improvement of habitat for wolves are not management considerations in Zone III. This recognition would seem to militate against the requirement that the state's regulatory framework provide for a statewide trophy game area encompassing areas where there is no suitable wolf habitat, as was required by the agency in the 2009 Final Rule." *Id*. at 44.

By refusing to timely delist the wolf in Wyoming, the United States has damaged the interests of the Wolf Coalition members and has violated the ESA. By its November 18, 2010 Order, this Court righted those wrongs, and upheld the Wyoming Wolf Management Plan. In short, this Court found that the "decision of the FWS to require the designation of the entire state of Wyoming as a trophy game area and refusing to . . . permit delisting of the gray wolf in Wyoming for that reason is arbitrary and capricious and should be set aside. *Id*. at 45. The only remaining issue related to Wyoming's Wolf Management Plan is addressed to whether it is necessary to expand the trophy game area to include one migration corridor "to ensure that [Yellowstone National Park] is not totally isolated from the other recovery areas, and also be of such permanence to preserve genetic connectivity in areas likely to be used by gray wolves within the three recovery areas, including northwestern Montana, central Idaho and the [Greater Yellowstone Area]." *Id*.

The United States, as the losing party, initially appealed this Court's November 18, 2010 Order and decision. The United States withdrew that appeal on March 14, 2011, and this Court's Order is now final.

The Wolf Coalition is the prevailing party in this action. Furthermore, the United States' position in defense of the FWS's action before this Court was not substantially justified. Accordingly, the Wyoming Wolf Coalition is entitled to an award of legal fees and

costs under the EAJA.

## II. THE AMOUNT OF FEES AND EXPENSES TO BE AWARDED

The EAJA provides that "fees and other expenses" shall include "reasonable attorneys' fees" and the "reasonable expenses of any project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). The Wyoming Wolf Coalition seeks an award of $ 35,842.50 of fees and $ 692.56 of costs and expenses for a total of $36,535.06. Supporting documentation is submitted as Appendices A, B and C hereto. These fees and costs are conservative in that they relate specifically to the Wolf Coalition's challenge to the 2009 Final Rule. As the above-described history shows, however, the Wolf Coalition also incurred substantial fees and costs in pursuing the earlier – and related – actions, including costs associated with reviewing the cumulative Administrative Record, which review was an integral part of challenging the FWS' 2009 Final Rule – the subject of the current litigation. Affidavits are attached as Appendix D.

WHEREFORE, Petitioner-Intervenor, Wyoming Wolf Coalition, respectfully prays for this Court to award it reasonable attorney fees and litigation expenses as requested herein.

/

/

/

DATED this 12th day of April, 2011.

      /s/ Harriet M. Hageman
Harriet M. Hageman
Kara Brighton
HAGEMAN & BRIGHTON, P.C.
222 East 21st Street
Cheyenne, Wyoming 82001
Telephone: (307) 635-4888
Facsimile: (307) 635-7581

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 12, 2011, a true and correct copy of the foregoing **WYOMING WOLF COALITION'S PETITION FOR AWARD OF ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT,** was served upon the following via the Electronic Case Filing system of the United States District Court for the District of Wyoming.

| | |
|---|---|
| Greg Phillips | [ ] U.S. Mail, Postage Prepaid |
| Jay Jerde | [ ] Hand Delivery |
| Wyoming Attorney General's Office | [ ] Federal Express |
| 123 Capitol Building | [ ] Facsimile: _____ |
| Cheyenne, Wyoming 82002 | [X] Other: CM/ECF Electronic Service |
| jjerde@state.wy.us | |
| | |
| Bryan A. Skoric | [ ] U.S. Mail, Postage Prepaid |
| James F. Davis | [ ] Hand Delivery |
| Park County Attorney's Office | [ ] Federal Express |
| 1002 Sheridan Avenue | [ ] Facsimile: _____ |
| Cody, Wyoming 82414 | [X] Other: CM/ECF Electronic Service |
| bskoric@parkcounty.us | |
| jdavis@parkcounty.us | |
| | |
| Michael R. Eitel | [ ] U.S. Mail, Postage Prepaid |
| U.S. Department of Justice | [ ] Hand Delivery |
| Environmental and Natural Resources Div. | [ ] Federal Express |
| Wildlife and Marine Resources Section | [ ] Facsimile: _____ |
| 1961 Stout Street, 8th Floor, Room 812 | [X] Other: CM/ECF Electronic Service |
| Denver, Colorado 80294 | |
| Michael.Eitel@usdoj.gov | |
| | |
| Nicholas Vassallo | [ ] U.S. Mail, Postage Prepaid |
| U.S. Attorney's Office | [ ] Hand Delivery |
| P.O. Box 668 | [ ] Federal Express |
| Cheyenne, Wyoming 82003-0668 | [ ] Facsimile: _____ |
| nick.vassallo@usdoj.gov | [X] Other: CM/ECF Electronic Service |

   /s/ Harriet M. Hageman
Harriet M. Hageman